**SANDERS v. BRADY, Warden.**

Civ. No. 2342.

District Court, D. Maryland.

Sept. 29, 1944.

Bernard J. Flynn, U. S. Atty., and Thos. J. Kenney, Asst. U. S. Atty., both of Baltimore, Md., for the Government.

James J. Laughlin, of Washington, D. C., for petitioner.

CHESNUT, District Judge.

This habeas corpus case presents some unusual procedural features which arise in this way.

On February 5, 1942, the petitioner was convicted in this court of bank robbery under 12 U.S.C.A. § 588b, and sentenced to twenty years imprisonment. The Attorney General designated the Atlanta Penitentiary as the place of confinement. On appeal the judgment was affirmed, Sanders v. United States, 4 Cir., 127 F.2d 647, and the Supreme Court denied certiorari, 317 U.S. 626, 63 S.Ct. 37, 87 L.Ed. 506.

In September 1944 there was pending in this court a case to which the Honorable John Paul, United States District Judge for the Western District of Virginia, had been specially assigned as the trial judge. The defendant in that case requested the court to issue summons for the petitioner, Hilliard Sanders, as a witness. In accordance with the request, Judge Paul issued the summons in the form of a habeas corpus ad testificandum under which the present petitioner was brought into this district as a witness, and in that case the petitioner was called and testified as a witness. During the pendency of that case the petitioner

addressed to the clerk of the court the petition for habeas corpus now presented. The clerk of the court presented the petition to Judge Coleman, who is the Senior District Judge in this District, but he referred the matter to the writer of this opinion for action thereon. Accompanying the petition was another petition for leave to sue in forma pauperis. This latter petition was granted and the clerk was directed to issue the writ returnable on September 22, 1944. The case pending before Judge Paul was then still in progress and the attorney for the United States was engaged therein. In consequence the hearing on the petition for habeas corpus was necessarily postponed until the following day. By that time the case before Judge Paul was concluded and he had left the City. When the case was called for hearing the petitioner was not represented by counsel but was informed by the court that the case had been assigned to the writer of this opinion for hearing and that Judge Paul was not available. Petitioner thereupon requested that I should proceed with the hearing but further requested a postponement to enable him to obtain counsel, which he stated he had been unable to obtain by reason of prisoner restrictions. The court thereupon directed the marshal to permit petitioner to communicate with counsel, and postponed the hearing, as requested by the petitioner, until September 26, 1944. On September 25, 1944 I received a telephone message from Mr. James J. Laughlin, an attorney from Washington, D. C., but admitted to practice in this court, requesting a further postponement of the case until Thursday, September 28, 1944, in view of his personal engagements. This request for further postponement was granted. The hearing has now been held and counsel have been heard.

The return by the Warden and by the Marshal in this case shows that the petitioner is now being held here in this district by authority of the writ of habeas corpus ad testificandum issued by Judge Paul.

The principal objective of the present petition is to secure the petitioner's unconditional release from further confinement under the sentence imposed upon the petitioner by this court for bank robbery. The contention now advanced to support this position is that the court lacked jurisdiction of the case because the federal statute on which the indictment was based was unconstitutional insofar as it applied to a state bank whose deposits were insured by the Federal Deposit Insurance Corporation, which was the case alleged in the indictment.

The petition makes two subordinate points, one being that Judge Paul's order under which the petitioner was brought here from Atlanta as a witness, specified that he should be confined in the Baltimore City Jail but that he has in fact been confined in the adjoining Maryland Penitentiary situated in Baltimore City. The other point is that the petitioner has been unusually, unreasonably and improperly disciplined by the Warden of the Atlanta Penitentiary in order to affect his expected testimony in the case here. With respect to the former point, I do not understand that it is now pressed, as the trial of the particular case has been concluded. If it were still pending I would think it proper to refer its consideration to Judge Paul. With regard to the latter point, I am of the opinion that I do not have the jurisdiction or authority to consider it at this time and in this venue. The Warden of the Atlanta Penitentiary is not a party to this case, and this Court has no jurisdiction over him. The petitioner has given his ex parte testimony as to his treatment at Atlanta. In substance it is to the effect that his correspondence was unreasonably restricted and he was not permitted to have a *private* conference with his counsel.

The only question, therefore, now presented for consideration is whether there is on procedural or substantial grounds cause for the release of the petitioner from the sentence imposed by this court in 1942. As to this the United States Attorney makes the procedural point that under the circumstances the question is not properly open for present determination here. It is pointed out that under the statute applicable to habeas corpus procedure in the federal courts district judges are limited in jurisdiction to cases arising "within their respective jurisdictions", 28 U.S.C.A. § 452. With respect to territorial jurisdiction this means that the petitioner must be confined within the district. Literally this is the case in this instance; but the more substantial point is that while the petitioner is physically present within this district the cause of his temporary detention in this district is not under the original sentence of this court but is by virtue of the subsequent and particular order of court bringing him here as a witness. In other words,

the authority for his detention here is not directly due to the sentence of this court but to the subsequent order of this court bringing him here for the particular purpose. Therefore, while the petitioner is presently physically in this district, it is said that he is not to be considered as being held here under the authority of the original sentence.

█ The procedural point thus presented is an unusual one and I have not been able to find an express prior adjudication under precisely similar circumstances. However, after consideration, I reach the conclusion that the point made by the United States Attorney is sound. In principle it was so decided in the case of Downey v. United States, 67 App.D.C. 192, 91 F.2d 223, 227. In that case the petitioner for habeas corpus had been sentenced by the District Court for the District of Columbia and had been confined at Atlanta, Georgia. On a petition for habeas corpus addressed to the United States District Judge for the Northern District of Georgia, he contended that he should be released because his sentence had expired. He had been sentenced on three separate indictments for robbery, and the question was whether by the wording of the commitment the sentences ran concurrently or consecutively. The District Judge in Georgia held that the sentences ran concurrently and ordered the release of the prisoner but stayed the order for fifteen days to give the United States an opportunity to take proceedings to have the ambiguous sentence made certain. Thereupon the United States obtained an order from the District of Columbia Court for the issuance of a writ of habeas corpus ad prosequendum. Under this writ the prisoner was taken back to the District of Columbia for further proceedings with respect to his sentence. Upon arriving there he applied for a writ of habeas corpus for his unconditional release. To this writ the marshal made return and answer that he was holding the appellant not under the commitment but under the writ of habeas corpus ad prosequendum. The petitioner demurred to this answer but the trial court overruled the demurrer, and the ruling was sustained on appeal. Speaking for the court, Associate Justice Stephens said:

"The demurrer was properly overruled and the writ properly discharged. The demurrer admitted the facts stated in the return and answer, and these facts, that the marshal was holding the appellant not under the commitment issued pursuant to the sentences, but under the writ of habeas corpus ad prosequendum, were a valid defense to the appellant's own writ. * * *

"The writs of habeas corpus ad prosequendum, testificandum, deliberandum 'issue when it is necessary to remove a prisoner, in order to prosecute, or bear testimony, in any court, or to be tried in the proper jurisdiction wherein the fact was committed.' * * * We do not understand the appellant to contend that the writ in question is not broad enough to include bringing him, for proceedings to correct the record, before the court which sentenced and committed him. The proceeding was in aid, in a broad sense a part, of the prosecution 'in the proper jurisdiction wherein the fact was committed.' The marshal's return was therefore good in substance, and warranted his continuing to hold the appellant for the proceedings in question."

█ The present petitioner is in this district only by virtue of the said writ of habeas corpus ad testificandum of this court. This writ can issue in proper cases by the judge in any district in the United States to bring before him any federal prisoner confined in any one of the numerous federal penal institutions in the country. If the petitioner's position is sound its effect would be to re-open for hearing sentences in one district in any other district to which the prisoner in a federal institution might be taken temporarily as a witness. I think that procedure would be highly inconvenient and undesirable in federal procedure. And it is quite unnecessary to make such an extension in the territorial jurisdiction of respective district judges in habeas corpus proceedings, because a prisoner in any federal institution has the right to apply to the district judge in the district in which he is confined under a court sentence for release where the sentencing court had no jurisdiction of the case.

But it may be thought that the instant case is distinguishable because the writ is addressed to the very court where the original sentence was imposed. The distinction thus made is true in point of fact but it does not alter the applicable procedural principle here involved. The return in this case shows that the particular respondents, the Warden of the Maryland Penitentiary and the Marshal of this court, have due and lawful authority for *their* holding of the petitioner. Therefore, viewing the present

procedure strictly, the necessary order would be to remand the petitioner to the custody of the respondents.

However, I am not unmindful that 28 U.S.C.A. § 461, relating to habeas corpus, provides—"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require." It may be thought, and indeed I understand is in substance contended for the petitioner, that if the petition is, strictly speaking, not sufficient on purely procedural grounds to present his substantial contention that his sentence was void, nevertheless it should be regarded as an application to this court which imposed the sentence to reconsider the original case and release the prisoner on the ground that the sentence was void because the prosecution was based on an unconstitutional Act of Congress, and, therefore, the court did not have jurisdiction to try the defendant on the indictment against him.

Ex parte Gouyet, D.C.Mont., 175 F. 230, 233, presented a similar contention. In that case the petitioner in habeas corpus was confined in the United States Penitentiary at Leavenworth, Kansas, under sentence of the Montana District Court, for violation of the immigration laws. Subsequently the defendant presented his habeas corpus petition to the sentencing court and contended that he should be released from Leavenworth where he was then confined, because one of the counts of the indictment against him was based on an unconstitutional Act of Congress. The District Judge denied the petition, holding that although one count in the indictment was bad because based on an unconstitutional Act, other counts were good and the sentence imposed did not exceed what was authorized under them. As to the procedural point, that the court lacked jurisdiction in habeas corpus because the prisoner was confined in Kansas and not in Montana, the Judge said:

"It is proper to remark, however, in view of the point made by the district attorney, that it is doubtful whether the court has jurisdiction in the premises. The Supreme Court and the Circuit and District Courts of the United States, and the several justices and judges thereof, are given power, within their respective jurisdictions, to issue writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty in certain specified instances. Sec-tions 751, 752, 753, Rev.St. U.S. (U.S. Comp.St. 1901, p. 592). The power thus conferred is expressly restricted to the territorial jurisdiction of the court to which the application is made. The general holding is that the Circuit and District Courts of the United States have no power or authority to issue a writ of habeas corpus to be sent out of their respective jurisdictions. (Church on Habeas Corpus, § 108; In re Boles, 8 Cir., 48 F. 75, 1 C.C.A. 48; Ex parte Kenyon, 14 Fed.Cas. 353 [No. 7,-720]; In re Bickley, 3 Fed.Cas. 332 [No. 1,387]), although I am advised that Judge Landis, of the district of Illinois, has discharged prisoners confined in the Leavenworth prison, probably on the theory that the court imposing the sentence has jurisdiction to inquire on habeas corpus into the validity thereof."

■ It may be urged, however, that because the prisoner is now in this district the petition, if not technically good as a petition for habeas corpus, should be treated as a petition to strike out the original sentence. As the term of court at which the sentence was imposed has long since expired, it is clear under all the authorities that the court lacks present power to modify or change the sentence, if otherwise valid. It is not, and could not be, contended that the sentence is not authorized by the statute, 12 U.S.C.A. §§ 588a and 588b, if the court had jurisdiction of the particular indictment. But it is contended that there was no such jurisdiction because the statute, insofar as it related to robbery of State banks although insured in the Federal Deposit Insurance Corporation, was unconstitutional. It may also be observed that if this was a good defense it could have been raised at the original trial by demurrer or other proper procedure. No such point was then made; and it is to be noted that the point was not made on appeal. The question now arises whether, the point having been open but not made, it is now foreclosed. It is further to be noted that if the point as now made is sound, it would apparently be equally sound if it had been made and overruled in the trial court but not presented and adjudicated on appeal.

■ I have some doubt whether under proper procedure the point should now be further considered or first considered by this court. There are numerous authorities to the general effect that habeas corpus will lie to question a *void sentence,* and in this

sense a sentence is void where it results from conviction on an indictment itself based on an unconstitutional Act of Congress. In Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717, the Supreme Court entertained a petition for a writ of habeas corpus based on a similar ground, as an incident of its appellate jurisdiction. In re Coy, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274, further extended the availability of the writ of habeas corpus as an attack upon a judgment based on unconstitutional Acts of Congress. There the petitioner had been convicted in the Indiana District Court and applied to the Circuit Court of Indiana by habeas corpus for release on the ground that the conviction was based on an unconstitutional statute. On appeal the Supreme Court approved the procedure but affirmed the denial of the writ on substantial grounds. And in Ex parte Nielsen, Petitioner, 131 U.S. 176, 9 S.Ct. 672, 33 L. Ed. 118, the Supreme Court held the writ of habeas corpus available where the judgment of the trial court denied to the prisoner a constitutional right.

But the later federal cases on habeas corpus procedure have seemed to contract the scope of availability of habeas corpus procedure to affect final judgments of a court even on constitutional grounds. Thus in Glasgow v. Moyer, Warden, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147, the Supreme Court held that habeas corpus was not a proper procedure to attack in the District Court of Georgia the final judgment of the District Court of Delaware, although the attack was made on constitutional grounds which, if valid, would have deprived the Delaware Court of jurisdiction. It was pointed out that the petitioner's remedy was by writ of error or appeal for which habeas corpus could not properly be substituted. And Glasgow v. Moyer was cited with approval recently by the Fifth Circuit in a habeas corpus case in which the present petitioner was there seeking release from imprisonment under the sentence of this court. Sanders v. Sanford, Warden, 5 Cir., 138 F.2d 415. He there based his application on the constitutional ground that this court had failed to give effect to the federal constitutional provision with respect to giving full faith and credit to a State record, that is, to the Visitors' Record Book of the Florida State Prison, in support of his alibi defense. In sustaining the action of the District Court in dismissing the writ the Court of Appeals said:

"If the trial court committed error in its ruling thereon, ample opportunity was afforded the appellant to have such error reviewed and corrected on appeal to the Circuit Court of Appeals, or upon certiorari in the Supreme Court. He availed himself of these privileges, in which proceedings it must be presumed that his rights were protected. It is not the function of the extraordinary remedy of habeas corpus to provide a means of additional review in such cases."

But compare Audett v. Johnston, Warden, 9 Cir., 142 F.2d 739, 740.

Bowen v. Johnston, Warden, 306 U.S. 19, 26, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455, is the most recent case in the Supreme Court dealing with the subject matter here involved, that is, the procedural applicability of habeas corpus in one federal court to challenge the validity of the judgment of another federal court. In that case Chief Justice Hughes, speaking for the court, said:

"But the rule, often broadly stated, is not to be taken to mean that the mere fact that the court which tried the petitioner had assumed jurisdiction, necessarily deprives another court of authority to grant a writ of habeas corpus. * * * The rule requiring resort to appellate procedure when the trial court has determined its own jurisdiction of an offense is not a rule denying the power to issue a writ of habeas corpus when it appears that nevertheless the trial court was without jurisdiction. The rule is not one defining power but one which relates to the appropriate exercise of power. It has special application where there are essential questions of fact determinable by the trial court. Rodman v. Pothier, supra, [264 U.S. 399, 402, 44 S.Ct. 360, 361, 68 L. Ed. 759]. It is applicable also to the determination in ordinary cases of disputed matters of law whether they relate to the sufficiency of the indictment or *to the validity of the statute on which the charge is based.* Id.; Glasgow v. Moyer, supra; Henry v. Henkel, supra, [235 U.S. 219, 229, 35 S.Ct. 54, 57, 59 L.Ed. 203]. But it is equally true that the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." (Italics supplied)

Recent cases in this Fourth Circuit dealing with the same procedural point are Sanderlin v. Smyth, 138 F.2d 729, 731; Eury v. Huff, 141 F.2d 554, 555.

In the original case in this court the defendant was represented by experienced counsel of his own choosing, and the present suggested defense was available but was not made either in the trial court or on appeal. If the judgment in the case based on a fair trial and affirmed on appeal with certiorari denied by the Supreme Court, can now be attacked on the ground mentioned after the lapse of more than two years, it is obvious that there is no time limit within which the judgment of a court is free from such attack. Under the federal penal system convicted defendants in criminal cases are often, and indeed generally, imprisoned in federal institutions far removed from the court in which they have been tried and convicted; and under the applicable statutes they may be transferred upon the direction of the Attorney General of the United States from one institution to another from time to time. As the decision of one district judge in habeas corpus is not *res adjudicata* as an estoppel against subsequent petitions in habeas corpus, it is apparent, if habeas corpus is applicable in the present circumstances, the petition can be used by a prisoner in every district in which he may be successively imprisoned. This possibility of repetitive and successive writs in different jurisdictions collaterally attacking the judgment of the original trial court, presents a seemingly serious question from the standpoint of finality of federal court judgments in criminal cases.

These comments as to procedure in habeas corpus do not indicate any lack of appreciation on my part of the immense importance of the part the writ of habeas corpus has played, and should continue to play, in favor of individual liberty. The writ has been a great bulwark of the citizen against oppression for more than two hundred and fifty years. If I may be permitted to express an opinion as the result of experience for some years past in many habeas corpus cases, it would be to suggest the advisability of limiting the venue for vacation or judicial annulment of confinement under sentence of a court to a direct application to the very court involved, with the right of appeal from that court in the usual way, and with the consequence that the final decision in the case be *res adjudicata* with respect to any subsequent petition based on the same grounds. So used, there would always be available a reasonable opportunity to the prisoner to have judicial inquiry made as to the cause of his imprisonment, and at the same time repetitive writs in distant places far removed from the trial court would be avoided, and the opportunity for appeal would amply protect the prisoner against an erroneous decision of the trial court. To effect this would require either new legislation or possibly the adoption of a new rule upon the subject by the Supreme Court with respect to appropriate exercise of the power of habeas corpus. See Bowen v. Johnston, supra, 306 U.S. at page 27, 59 S.Ct. at page 446, 83 L.Ed. 455. Habeas corpus lies in the field of civil rather than criminal procedure; but in this connection it may be noted that rule 25 of the proposed new federal rules of criminal procedure provides "a motion for a new trial based on the ground * * * that the defendant has been deprived of a constitutional right, may be made at any time before or after final judgment". My attention has also been called to a very recent decision in the Third Circuit, apparently not yet reported (United States v. Steese, 3 Cir., 144 F.2d 439), in which it is said the court held that the district court in which a defendant had been sentenced was authorized to hear his petition to set aside the conviction many years previously on the ground that the court did not advise him of his right to the assistance of counsel, the decision being put on the ground that such petition should be treated as a modern substitute for a writ of error coram nobis. And it is further said that the Solicitor General has approved a recommendation that certiorari should not be applied for, in view of the proposed new federal rule of criminal procedure, even though the decision may not be in accordance with the present applicable law.

Despite these doubts as to the procedural point, I have nevertheless considered the constitutional point involved and have reached the conclusion that there is no reasonable doubt as to the constitutionality of the Act of Congress in question.

12 U.S.C.A. § 588b provides in subsection (a) that whoever robs another of property or money belonging to a bank shall be fined not more than $5,000 or imprisoned not more than 20 years, or both; and subsection (b) provides that whoever in committing such an offense puts in jeopardy the life of any person by the use of a dangerous weapon shall be fined not less than $1,000 nor more than $10,000 or imprisoned not less than five years nor more than twenty-five years, or both. Section 588a

defines the term "bank" as so used in section 588b, to include any insured bank as defined in subsection (c) of section 264 of title 12. Section 264 is a very long section creating and regulating the Federal Deposit Insurance Corporation. In subsection c(8) the term "insured bank" is defined to mean any bank the deposits of which are insured in accordance with the provisions of the section. The contention now advanced is that Congress did not have the constitutional authority to provide for such insurance of State banks and therefore did not have the authority to sanction the protection of their property or money by the criminal penalties set up in section 588b.

The contention is not sound. The validity of the statute has been decided or assumed by federal courts in a number of recent cases. Its validity with respect to State banks which are so insured was at least assumed in Steffler v. Johnston, 9 Cir., 121 F.2d 447, certiorari denied 314 U.S. 676, 62 S.Ct. 187, 86 L.Ed. 541; Hudspeth v. Melville, 10 Cir., 127 F.2d 373, and Hewitt v. United States, 8 Cir., 110 F.2d 1, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409. Even more authoritative are two cases which have directly upheld the validity of conviction for violations of 12 U.S.C.A. § 592 which punishes the embezzlement of funds of such an insured bank. Doherty v. United States, 8 Cir., 94 F.2d 495; Weir v. United States, 7 Cir., 92 F.2d 634, 114 A.L.R. 481. To the same effect is Audett v. Johnston, Warden, 9 Cir., 142 F.2d 739.

In Westfall v. United States, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036, the Supreme Court in an opinion by Mr. Justice Holmes upheld the conviction under an indictment charging the defendant with aiding and procuring the Branch Manager of a State Bank which was a member of the Federal Reserve System, to misapply the funds of the bank. The Circuit Court of Appeals had certified a question to the court as to the constitutional validity of the applicable statute. In the opinion it was said:

"And if a State bank chooses to come into the System created by the United States, the United States may punish acts injurious to the System, although done to a corporation that the State also is entitled to protect. The general proposition is too plain to need more than statement."

The analogy to the present case is quite clear.

For these reasons, both procedural and substantial, the writ of habeas corpus must be discharged and the petitioner remanded to the custody of the respondents.